**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-02045-SBP

JACK BUTLER,

      Plaintiff,

v.

BURNING MAN PROJECT,
DAVE WELLHAUSER,
STEPHANIE VESIK, a/k/a RANGER HAZELNUT, and
ELSEWHENCE.COM LLC,

      Defendants.

---

**ORDER**

---

**Susan Prose, United States Magistrate Judge**

This matter comes before the court on the renewed motion of Defendants Burning Man Project ("Burning Man"), Dave Wellhauser, Stephanie Vesik, and Elsewhence.com LLC ("Elsewhence") (collectively, "Defendants") to order a discretionary transfer of this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (ECF No. 46) ("Motion" or "Motion to Transfer"). Plaintiff Jack Butler filed a response in opposition to the Motion (ECF No. 53). The court heard oral argument on the Motion on September 3, 2025. ECF No. 55. All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c). ECF No. 23 (consent form); ECF No. 24 (Order of Reference).

Having now carefully considered the Motion and associated briefing, as well as the entire

docket, the applicable law, and the parties' respective positions at oral argument, the court exercises its discretion and respectfully **DENIES** the Motion to Transfer.

## BACKGROUND

The court discussed the procedural history of this case in an order issued on March 28, 2025. ECF No. 39. In that order, the court confirmed that it has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) and denied without prejudice Defendants' first motion to transfer venue to the Northern District of California pending the filing of Mr. Butler's Second Amended Complaint. *See id.* at 3-8, 14; *see also* Second Amended Complaint (ECF No. 42) (docketed April 10, 2025). Defendants subsequently filed the renewed Motion to Transfer at issue here.

The facts relevant to the venue-transfer question were somewhat difficult for the court to uncover, owing in part to the parties' filings, which included scant details of when and where the events underlying this action unfolded. At the oral argument, the court repeatedly pressed counsel for both sides about the relevant facts—information which, respectfully, should have been set forth in their papers. As it turns out, Mr. Butler was present in the courtroom. After Mr. Butler's counsel was unable to answer several questions which the court deemed pertinent to the transfer-of-venue question, the court exercised its discretion to elicit sworn testimony from Mr. Butler. The court's limited questions of the witness were focused on providing additional context for the statements Mr. Butler made in his declaration appended to his response to the Motion to Transfer,[1] along with other points made in the substantive briefing on the Motion. Counsel for

---

[1] The attachment referenced in Mr. Butler's declaration at ECF No. 53-2 was missing from the record. At the court's request, a copy of the attachment was produced during the oral argument.

both Mr. Butler and Defendants were then allowed to question Mr. Butler. The following facts are culled from the entire docket in this matter, including the Second Amended Complaint (ECF No. 42),[2] information provided at the oral argument,[3] and publicly-available "information derived from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2) (permitting judicial notice of such facts).

The Burning Man Project bills itself as the nonprofit corporation that functions "in service to" the Burning Man "culture," exemplified in "a global cultural movement advancing a more creative, connected and thriving society." *See* Who We Are, https://burningman.org/about-us/who-we-are/, last accessed July 12, 2026.[4] Burning Man holds its "signature annual gathering" in the Nevada desert. *See id.* A similar event is hosted by Elsewhence, a Colorado limited liability company, and takes place every year in Bailey, Colorado. *See* Our Philosophy!,

---

The court also ordered that a corrected copy of ECF No. 53-2, with the attachment properly appended, be entered in the record. *See* ECF No. 55 (order); ECF No. 56 (corrected Butler declaration).

[2] The Second Amended Complaint does not list Elsewhence as a defendant. ECF No. 42 at 1. Upon obtaining the parties' consent at the oral argument, the court ordered that the caption be amended to correctly name all Defendants, including Elsewhence. ECF No. 55.

[3] This information is derived from a careful review of the recording of the oral argument, which has not been transcribed. The court notes that Defendants' counsel purported to dispute some aspects of Mr. Butler's testimony, but for purposes of the venue-transfer question, Defendants presented no evidence sufficient to call into question the facts set forth here.

[4] For purposes of the analysis of the Motion to Transfer, this court takes notice of certain background facts from websites indisputably administered by the various players here as "public information that is not reasonably subject to dispute." *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 183-84 (10th Cir. 2025) (citing *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (taking judicial notice of information on Northrop Grumman's website and noting "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web")).

http://elsewhence.com/wft-is-this, last accessed July 12, 2026. Elsewhence describes itself as "a collaborative festival that combines volunteerism with creating community. The result is a small collection of dedicated individuals that produce music and interactive art with the intent to share experiences with our fellow humans." *Id.* Mr. Wellhauser represents himself as the "owner" of the limited liability company that runs Elsewhence, Wellhauser Decl., ECF No. 33-1 ¶ 1, and this court has determined that he is the only member of Elsewhence.com LLC. ECF No. 39 at 5.

Mr. Butler, a resident of Colorado, formerly held a position known as a "Black Rock Ranger." ECF No. 42 ¶ 1; ECF No. 33-1 ¶ 3. Mr. Wellhauser describes the Black Rock Rangers as "a volunteer group that participates in Burning Man events." ECF No. 33-1 ¶ 2. The Rangers identify themselves as "participants who volunteer a portion of their time at Burning Man in service of the safety and well-being of the Burning Man community" by acting as "non-confrontational community mediators, providers of reliable information, facilitators of public safety, and navigators at the edge of chaos." *See* Black Rock Rangers, https://rangers.burningman.org, last accessed July 12, 2026. Mr. Wellhauser volunteers as a Black Rock Ranger. ECF No. 33-1 ¶ 2. As Mr. Butler confirmed in his testimony at the oral argument, he also volunteered as a Black Rock Ranger, most recently at the Nevada Burning Man event in August 2022.

Even though Burning Man "does not sanction Elsewhence," *id.* ¶ 1, it appears that at least some people who frequent Elsewhence also participate in the Burning Man event in Nevada. During the September 2022 Elsewhence festival in Colorado, Mr. Wellhauser received a report from "a woman who [he has] known for multiple years," *id.* ¶ 3, who the court will refer to here

as "K.S."[5] At oral argument, Mr. Butler testified that when he was volunteering as a Black Rock Ranger at the August 2022 Burning Man event, he "interacted some" with K.S., a person he had known "for a few years." According to Mr. Wellhauser, K.S. informed him that Mr. Butler had raped her during the August 2022 Burning Man event in Nevada, *id.* ¶ 3—an allegation that Mr. Butler vigorously denies and that K.S. herself subsequently retracted. Even so, K.S. told others at the Elsewhence event the same story: that she had been raped by Mr. Butler. The information presented at oral argument indicated that several people heard K.S.'s allegation, which she apparently shared around a campfire at the Elsewhence event in Bailey, Colorado.

After Mr. Wellhauser received K.S.'s report, he reported her rape allegations to an unidentified member of the Black Rock Rangers. *Id.* ¶ 4. Mr. Wellhauser did not, however, report K.S.'s allegation to any certified law enforcement official, a strategy apparently in conformity with the practices and protocols of both the Black Rock Rangers and Burning Man. It is undisputed that K.S.'s report to Mr. Wellhauser, and his taking action in response to that report, were actions that were undertaken in Colorado.

At the oral argument, Mr. Butler testified that K.S.'s accusation prompted Mr. Wellhauser to initiate an investigation into the claim. To that end, Mr. Wellhauser appointed Caroline Kert, an attorney based in Boulder, Colorado, and an Elsewhence affiliate, to conduct the investigation. According to the website of Creative Legal, Ms. Kert's law firm, she "was appointed as Burning Man's regional contact for Boulder in 2016." *See* https://creative-legal.com.biophilosophy.html, last accessed July 9, 2026. Mr. Butler represented at oral

---

[5] There is apparently no dispute concerning the identity of K.S. or that she was known to Mr. Butler and Defendants.

argument that Ms. Kert reached out to several women to ask them if they had "had any negative experiences related to sexuality with" Mr. Butler. Ultimately, Ms. Kert (or Mr. Wellhauser himself) contacted Brianna Cook, "(Plaintiff's current girlfriend who is and at all relevant times was a resident of Colorado)"; Lisa Wachowicz, "(Plaintiff's former girlfriend who is and at all relevant times was a resident of Colorado)"; Julie Pellerin, "(Plaintiff's former girlfriend who is and at all relevant times was a resident of Colorado)"; and "other persons who were residents of Colorado[.]" *See* ECF No. 53 at 2-3; *see also* Butler Decl., ECF No. 56 ¶ 2 (stating that Butler was informed by several people, including Pellerin, that "Caroline Kert, as an agent (employee, volunteer, or attorney) of Elsewhence, was contacting my former and current girlfriends to 'dig-up dirt' on me").

Counsel for Defendants sought to downplay Ms. Kert's role in the investigation of K.S.'s allegations against Mr. Butler, noting that she did not prepare a written report and that the investigation was formally assigned to a "person in Oregon"—presumably, Ms. Vesik, who resides there. *See* Vesik Decl., No. 46-1 ¶ 2. Mr. Butler testified that shortly after the Elsewhence event, he was interviewed by Ms. Vesik and Jake Schaefer, an individual based in St. Louis known as "Ranger Fez Monkey." Ms. Vesik also contacted Ms. Wachowicz. *See* ECF No. 56 at 4 (email chain between Wachowicz and "Ranger Hazelnut").

On April 3, 2024, Mr. Butler brought suit in Jefferson County District Court against Burning Man, Mr. Wellhauser, and Ms. Vesik, raising claims for defamation, breach of contract, and violation of privacy under Colorado state law. ECF No. 4 ¶¶ 13-34. On July 25, 2024, Defendants removed the case to this court and simultaneously moved to transfer venue to the United States District Court for the Northern District of California. ECF No. 1 (notice of

removal); ECF No. 2 (first motion to transfer venue). On November 20, 2024, Mr. Butler moved to amend his complaint to add Defendant Elsewhence. ECF No. 30. On March 28, 2025, the court granted the motion to amend and denied the first motion to transfer, noting that Defendants could refile the transfer motion after Mr. Butler filed his Second Amended Complaint. ECF No. 39 at 14. The Second Amended Complaint narrowed Mr. Butler's claims to two state law claims alleging that Burning Man breached its "contracts and agreements" with him and that all Defendants violated his privacy rights. ECF No. 42 ¶¶ 15-34.

Defendants filed the instant Motion on May 7, 2025. ECF No. 46 at 1. In it, they assert that a discretionary transfer of this matter to the Northern District of California is warranted because Defendant Burning Man is located in California and that most of the acts and omissions giving rise to Mr. Butler's claims occurred in California. *Id.* at 4-5. Defendants further contend that key witnesses and evidence are located in California and that the interest of justice accordingly favors transfer. *Id.* at 5-8. Mr. Butler refutes these claims, countering that his choice of forum as Plaintiff is entitled to significant weight, and that Colorado is also the more convenient venue and the forum more closely intertwined with the dispute. ECF No. 53 at 2-7.

## ANALYSIS

A civil action can be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For purposes of venue, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Defendants contend that the Northern District of California is a proper venue for this action under § 1391(b)(2) because Burning Man's headquarters are located in San Francisco and because a "substantial part of the events or omissions" occurred in that District. ECF No. 46 at 3, 8.

The venue-transfer question is governed by 28 U.S.C. § 1404(a), which provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The decision to transfer venue lies in the sound discretion of the district court and should be based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 29 (quotation omitted). As the moving parties, Defendants bear the burden to show that the District of Colorado is an inconvenient forum and that the action should be transferred to the Northern District of California for convenience and in the interest of justice. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

"In ruling on a motion to transfer venue, district courts must assess two issues: (1) whether the case might have been brought in the proposed transferee district, and (2) whether

8

the 'competing equities' weigh in favor of adjudicating the case in that district." *Brumate, Inc. v. Walmart Inc.*, No. 22-cv-00354-WJM-SBP, 2023 WL 3602327, at *2 (D. Colo. May 23, 2023). Because the lawsuit could have been brought in the Northern District of California, where Burning Man is headquartered, the transfer question turns on the court's assessment of the "competing equities" in play, which include the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (citation modified); *see also Chrysler Credit Corp.*, 928 F.2d at 1516 (same). The court addresses the factors most pertinent here and concludes that Defendants have failed to show that the interest of justice warrants a transfer.

   ***Plaintiff's Choice of Forum.*** The Tenth Circuit Cout of Appeals has stated that "[u]nless the balance is *strongly* in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972) (emphasis added). Here, Mr. Butler's decision to file this lawsuit in the District of Colorado weighs heavily against the transfer of this action. This is especially so because he is a resident of this District. *Cf. Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006) (noting that deference to a plaintiff's choice is "diminished where plaintiff[] do[es] not reside in the chosen forum"). Defendants argue

that Mr. Butler's choice of forum does not deserve deference because "there are no material factual allegations in Plaintiff's Complaint regarding the Plaintiff's choice of forum." ECF No. 46 at 5 ("[W]here there are no material factual allegations in Plaintiff's Complaint regarding the Plaintiff's choice forum, Courts do not give much deference to that choice.") (citing *Keymark Enterprises, LLC v. Eagle Metal Products*, No. 08-cv-00662-REB-MEH, 2008 WL 4787590 (D. Colo. Oct. 30, 2008)).[6] However, in assessing the venue-transfer question, the court is not restricted to the allegations in the pleading. And, as articulated in the court's statement of the factual background, above, Mr. Butler has come forward with information showing that "a substantial part of the events or omissions giving rise to" his claims occurred in the District of Colorado, his chosen forum. *See* 28 U.S.C. § 1391(b)(2).

Mr. Butler presented credible evidence demonstrating that the false accusation that spawned the investigation occurred at the Elsewhence event in Bailey, Colorado. That investigation, which is the impetus for this lawsuit, was conducted in significant part in Colorado, with the participation of a Colorado attorney. As part of that investigation, multiple witnesses in this state were contacted by Ms. Kert and other persons affiliated with Burning Man. If Ms. Kert did not lead the investigation or prepare a formal report, as counsel for Defendants indicated at oral argument, that does not compel the conclusion that she is a witness

---

[6] The court does not find that legal principle articulated in *Keymark Enterprises*. That case primarily concerned the application of the first-to-file rule, which provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *Keymark*, 2008 WL 4787590, at *3 (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965)). In *Keymark*, the court found the plaintiff's choice of forum "carrie[d] substantially diminished weight" because the party "sought to mislead [defendant] about the filing of the first suit in order to gain the advantage of filing first." *Id.* at *9.

of no significance. The information presented to the court shows that Ms. Kert was involved at the outset and talked to witnesses in Colorado who were in a position to incriminate or exonerate Mr. Butler. This record gives the court no reason to ascribe lessened importance to Ms. Kert's potential testimony.

Perhaps, on a purely technical level, "the investigation was conducted from the State of California" because Burning Man maintains its headquarters there, *see* ECF No. 46 at 5, but the fact that Burning Man itself is not a resident of Colorado is outweighed by a factual record emphasizing that Colorado was the focus of Defendants' inquiry that prompted Mr. Butler to sue them. *See Emps. Mut. Cas. Co.*, 618 F.3d at 1168 ("Although EMC is an Iowa corporation that does not reside in Wyoming for purposes of § 1404(a), the facts giving rise to the lawsuit have a material relation or significant connection to Wyoming"—the plaintiff's chosen forum.) (citation modified).

In sum, the rare circumstances that might support the rejection of Mr. Butler's chosen forum are not present here. *See William A. Smith Contracting Co.*, 467 F.2d at 664. The court finds that this factor weighs strongly against transfer.

***The Location of Witnesses and Sources of Proof.*** "The convenience of witnesses is the most important factor in deciding a motion [to transfer venue] under § 1404(a)." *Emps. Mut. Cas. Co.*, 618 F.3d at 1168 (quotation omitted). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.'" *Id.* (citation modified). Defendants have not made an adequate showing on any of

11

these points.

Mr. Butler, however, has shown that, at a minimum, five witnesses who can present material testimony are located in Colorado: Mr. Butler himself; Ms. Kert, an attorney-investigator for Burning Man; and three women who were contacted during Burning Man's investigation of Mr. Butler—Brianna Cook, Lisa Wachowicz, and Julie Pellerin. As for those witnesses located outside of Colorado, the defendants other than Burning Man reside on opposite coasts of the United States and not in California: Mr. Wellhauser and Elsewhence are citizens of New York, *see* ECF No. 39 at 5-6, and Ms. Vesik resides in Oregon. *See* No. 46-1 ¶ 2. When pressed at oral argument for the identity of *any* witness who is physically located in California, counsel for Burning Man was able to identify only one person: an individual named "Adam," whose last name counsel could not recall but who the court believes may be Adam Belsky, general counsel for Burning Man. *See* https://burningman.org/about-us/who-we-are/year-round-staff/ ("As General Counsel for Burning Man Project, Adam oversees all of Burning Man's legal affairs. Adam has over 30 years of experience as a lawyer."), last accessed July 11, 2026; *see also* https://burningman.org/about-us/contact (listing address of headquarters of Burning Man Project in San Francisco), last accessed July 11, 2026.

The record, therefore, is uncontradicted that the majority of the potential witnesses in this case are located in Colorado. It is also clear that the Colorado-based witnesses include, at a minimum, four witnesses who are privy to the critical facts in this matter—Mr. Butler and three of his current or former girlfriends—as well as Ms. Kert, a Burning Man-designated investigator. As for Mr. Belsky, the lone witness in California (assuming that Mr. Belsky is in fact the "Adam" that counsel could not name at oral argument), Defendants have presented no information that

12

would allow the court to assess the "quality and materiality" of his testimony. *See Emps. Mut. Cas. Co.*, 618 F.3d at 1168.

Nor does the record indicate that Mr. Belsky personally participated in the investigation of the false and now wholly discredited accusation against Mr. Butler. But even if Mr. Belsky played some role in Burning Man's examination of this dispute (and further assuming that he would have testimony to give that lies outside the bounds of the attorney-client privilege and protected work product), the court finds no basis to conclude that this fact evinces any inconvenience of legal magnitude in requiring Burning Man to litigate in the District of Colorado. Burning Man has not shown that it would be obliged to utilize compulsory process to bring its own general counsel to Colorado for a possible trial. *See id.*; *see also Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1257 (D.N.M. 2013) ("Where the key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance.") (quoting *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 793 (E.D. Tex. 2006)). And this court is disinclined to shift the inconvenience of litigation away from one executive-level employee in California to the majority of potential witnesses whose identities have been brought to light in this matter and for whom Colorado is clearly the more convenient venue. *See Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1182-83 (D. Colo. 2008) ("[B]ecause the vast majority of the individuals who are inconvenienced by a Colorado venue are Defendants' executives and employees, transferring the venue to Texas would merely shift inconvenience from Defendants to Plaintiff. I find such '[a] shifting of inconvenience from one side to another is not a strong reason for transfer' from Plaintiff's chosen forum.") (quoting *Triple A P'ship v. MPL Commc'ns Inc.*, 629 F. Supp. 1520,

13

1526 (D. Kan. 1986), then citing *Welch v. Pro-Benefit Staffing, Inc.*, No. 90-A-426, 1990 WL 174885, *6 (D. Colo. Nov. 7, 1990)).

By contrast, Mr. Butler likely would have no ability to compel the attendance of his putative witnesses at a trial in California. The court further finds no record support for the proposition, implicit in Burning Man's argument, that California would be a more convenient forum for the other Defendants, none of whom are residents of California and two of whom are located on the other side of the continent in New York.

As for the sources of proof, *see Emps. Mut. Cas. Co.*, 618 F.3d at 1167, Defendants assert (1) that "[d]ocuments and information concerning the investigation of [Mr. Butler] are in California," ECF No. 46 at 4, and (2) that "the alleged actions performed by the Defendants that gave rise to Plaintiff's two claims for relief occurred in the State of California." *Id.* at 6. Here, again, Defendants provide no persuasive support either contention.

Beginning with the second point, the investigatory actions that Mr. Butler challenges were focused on a slanderous statement made at an event in Colorado to witnesses located in Colorado, that impacted a plaintiff who resides in Colorado, and that prompted the formation by Mr. Wellhauser of what is dubbed a "Colorado Consent Committee"—presumably, a mechanism for internal policing of sexual misconduct at Burning Man events—"that included other members of Plaintiff's community in Colorado to hear the defamatory statements and accusations against him." *See* ECF No. 53 at 2-3. While it may be that Rangers are technically "managed from [Burning Man's] headquarters in San Francisco," ECF No. 46 at 6,[7] Burning Man points to no

---

[7] By this logic, it would follow that federal agencies headquartered in Washington, D.C., could insist on transfer to that District in every case where a Colorado-based federal employee—who

14

concrete information demonstrating that Mr. Belsky (or some other unnamed Burning Man official located in California) was so actively involved in directing the investigatory activities of Ms. Kert in Colorado, Mr. Wellhauser in New York, and Ms. Vesik in Oregon (and Mr. Schaefer in St. Louis), as to shift the factual locus of the case from Colorado to California.

Next, the assertion that transfer of the case to California is warranted because the relevant documents are located there, *see* ECF No. 46 at 4, likewise carries little weight in the court's assessment of the transfer question. There is no information in the record—indeed, it would be an oddity in the modern world if there was—suggesting that Burning Man's documents are not maintained electronically and therefore not immediately accessible for purposes of this litigation, just as they were apparently accessible to Burning Man's investigators spread across the country.

Accordingly, upon consideration of the location of witnesses and the sources of proof as shown in the record here, the court finds that this factor weighs strongly against transferring this action to the Northern District of California.

***The Cost of Making the Necessary Proof.*** The court finds that the relative costs of litigating militate against a transfer from Mr. Butler's chosen forum of Colorado, where he resides, to the one Defendants prefer.

Burning Man has presented no information demonstrating that it lacks the financial wherewithal to litigate in a forum outside its home District, nor could it credibly do so in light of its recent record of engaging in litigation outside the Northern District of California. *See Black*

---

might be said in some indirect sense to be "managed" by headquarters personnel—is sued for his or her conduct in this jurisdiction. The undersigned is unaware of judges in this District approving wholesale transfers of such cases to the District of Columbia on that basis.

15

*Rock City LLC v. Haaland*, No. 19-cv-3729 (DLF), 2024 WL 1406549, at *6 (D.D.C. Mar. 28, 2024) (awarding Burning Man $210,834.34 in attorney's fees and $17,888.55 in legal costs in a case against the Department of Interior and other federal defendants). Too, the other Defendants here are represented by counsel for Burning Man, indicating they bear no personal responsibility for the litigation costs in this matter. Mr. Butler is in a different position. Based on its review of the record and its observation of Mr. Butler's testimony at the oral argument, the court perceives that he is neither a wealthy nor a legally-sophisticated individual. He has, however, managed to secure counsel in Colorado—a feat he may be unable to repeat if this action is transferred to California.

In light of these circumstances, the cost factor weighs forcefully against a transfer.

***Remaining Factors.*** The parties' arguments concerning the other transfer-of-venue factors are cursory or non-existent, but to ensure a complete analysis, the court briefly reviews the most relevant considerations and finds that none tip the scale in favor of transfer.

As to the question of the enforceability of a judgment, "[a] judgment obtained in federal court may be enforced in any other federal court through a very simple 'registration' process in the federal court where enforcement would take place." *Brumate*, 2023 WL 3602327, at *4 (citing 28 U.S.C. § 1963). The "minimal paperwork and nominal fees" that registration entails render this factor neutral. *Id.*

So, too, is the factor requiring an examination of the relative advantages and obstacles to a fair trial of little import to the transfer analysis. Mr. Butler asserts that transfer would undermine his chance at a fair trial because Burning Man "is a popular organization that brings in a good deal of tourism, income and notoriety to Northern California." *See* ECF No. 53 at 6.

This is sheer speculation on Mr. Butler's part. This court has no basis to gauge the popularity of Burning Man with the average California resident, and it seems doubtful that Burning Man is a significant driver of the Northern California economy. At bottom, this court has no reason to doubt that the Northern District of California and the District of Colorado are equally capable of providing both sides a fair trial in this matter.

Mr. Butler next argues that California courts are "notoriously congested" in comparison with courts in this District, ECF No. 53 at 6, but the most recent statistics from the Administrative Office of the U.S. Courts do not support that contention. Indeed, the median time for a civil case to reach trial is somewhat faster in California than in this District: 30.7 months in the Northern District versus 39.3 months in the District of Colorado. *See* Combined Civil and Criminal Federal Court Management Statistics 66, 79 (Mar. 31, 2026), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0331.2026.pdf, last accessed July 11, 2026. Regardless, the court does not view that as a consequential difference when balanced against the more relevant consideration in play here.

Turning to the conflict-of-laws factor, Mr. Butler argues that "Colorado privacy-rights law has a greater potential of differing from California's law in a manner that materially affects the outcome of this case than any potentially relevant differences in the two states' contract law." ECF No. 53 at 6. The court is unsure what to make of that assertion because Mr. Butler provides no legal authority to support it. For their part, Defendants argue that, "[a]lthough there is no clear choice" because there is no choice-of-law provision in Mr. Butler's contract with Burning Man, "California law will likely apply." ECF No. 46 at 6 (citing Restatement (Second) of Conflict of Laws § 188). As for Mr. Butler's claim that Defendants violated his privacy rights, Defendants

contend that "California law is fully equipped to handle" that claim for relief," *id.* at 8, but they point to no California law governing that claim.

These arguments, on both sides, are nebulous indeed. What the court can say with certainty at this juncture is that Mr. Butler's claims for breach of contract and violation of his privacy rights do not raise particularly complex legal issues; with full briefing by able counsel in this case, this court is capable of deciding the choice-of-law question. *See Kruse v. Gerdisch*, No. 23-cv-01153-TC-RES, 2024 WL 4040347, at *3 (D. Kan. Sept. 3, 2024) (finding that the conflict-of-laws factor "receives less weight when the case involves relatively simple legal issues . . . because federal judges are qualified to apply state law") (quoting *Emps. Mut. Cas. Co.*, 618 F.3d at 1169). The court cannot conclude that the conflict-of-laws factor weighs in favor of transfer.

Neither does the factor addressing the supposed advantage of a local court determining questions of local law warrant transfer. Here, the undersigned discerns no particular advantage to conducting this litigation in California. Even if the contracts at issue were executed outside of Colorado—a point that is not explicitly clear on the current record—any prudential interest California has in regulating contracting parties within its borders is reduced where, as here, there is nothing to indicate that the contracts were performed or breached in that state. In addition, the alleged violations of Mr. Butler's privacy occurred in Colorado, commencing with the false statement made by K.S. and the spread of that falsehood in the multiple calls of Burning Man investigators (including one based in Boulder) to witnesses in located in Colorado.

\*　　\*　　\*

18

Considering all of the factors discussed above, the court finds that they weigh against transferring this case to another District. Defendants have not met their burden to show that transfer is warranted under § 1404(a).

### CONCLUSION

Consistent with the foregoing analysis, it is respectfully **ORDERED** that

(1) Defendants' Renewed Motion to Transfer Venue Pursuant to 28 U.S.C. Section 1404(a) (ECF No. 46) is **DENIED.** It is further **ORDERED** that

(2) Defendants shall respond to the Second Amended Complaint (ECF No. 42) **on or before August 14, 2026**. It is further **ORDERED** that

(3) A Scheduling Conference will be held telephonically on **October 5, 2026, at 10:00 a.m.**, in Courtroom A-502, on the fifth floor of the Alfred A. Arraj United States Courthouse located at 901 19th Street, Denver, Colorado. The parties shall attend by calling 571-353-2301, Guest meeting ID- 868150043. A proposed scheduling order (including a copy in Word format sent to Prose_Chambers@cod.uscourts.gov) is due by **September 28, 2026**.

DATED: July 12, 2026                     BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

19